UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AGROPUR, INC.,

    Plaintiff,

v.

THE SCOULAR COMPANY,

    Defendant.

Case No. 17-cv-1247 (JNE/SER)
ORDER

Plaintiff Agropur, Inc. ("Agropur") sues Defendant The Scoular Company ("Scoular") for alleged breaches of express warranty (Count I), implied warranties (Count II), and contract (Count III) in connection with the manufacture and sale of protein beverages that became moldy. *See* Compl., Dkt. No. 1. Scoular moves for partial dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b). Dkt. No. 20. Scoular also moves for an extension of time to respond to the Complaint, requesting a deadline of 14 days after a ruling on the motion to dismiss. *Id.*

### A. Motion to Dismiss

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (citation omitted); *see also Neubauer*, 849 F.3d at 403.

Scoular moves to dismiss Count I "to the extent it depends upon an extra-contractual email (*see* Compl. ¶¶ 11, 37, 41) . . . ." Scoular Br. 13, Dkt. No. 22. Agropur does not dispute

1

the issue, conceding that the email is not "independently actionable." Agropur Opp. 17, 18 n.3, Dkt. No. 29. Scoular's narrow request to dismiss part of Count I is therefore granted.

Scoular also moves to dismiss Count II, which alleges breach of implied warranties, on the ground that the parties' contract disclaimed all implied warranties. Agropur argues that the contract's attempted disclaimer was ineffective under Minnesota law.

Under Minnesota law incorporating the Uniform Commercial Code, implied warranties of merchantability and fitness may be excluded or modified from a contract for a sales transaction. The statute provides in part:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing *must be conspicuous*, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing *and conspicuous*. . . .
>
> (3) Notwithstanding subsection (2)[,]
>
>     (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty . . . .

Minn. Stat. § 336.2-316 (1986) (emphasis added). The statute defines "conspicuous" as "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." *Id.* § 336.1-201, subd. b(10). It further provides that "[c]onspicuous terms include the following:"

> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>
> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

*Id.* Statutory commentary explains that "[t]his definition states the general standard that to be

2

conspicuous a term ought to be noticed by a reasonable person." Minn. Stat. Ann. § 336.1-201, UCC Cmt. 10 (Westlaw through laws of 2017 Reg. & 1st Special Sess.). The word "conspicuous" is meant to express the requirement that a term, to be effective, must be "sufficiently prominent to attract attention to it." *Id.*, Cmt. to Subsection 1-201(10). The illustrations provided in subsections (A) and (B) simply "set out several methods for making a term conspicuous," which are not exhaustive and should not displace the test of "whether attention can reasonably be expected to be called to" the disclaimer. *Id.*, UCC Cmt. 10; *see also Agristor Leasing v. Guggisberg*, 617 F. Supp. 902, 909 (D. Minn. 1985). Commentary states that "[r]equiring that a term be conspicuous blends a notice function (the term ought to be noticed) and a planning function (giving guidance to the party relying on the term regarding how that result can be achieved)." Minn. Stat. Ann. § 336.1-201, UCC Cmt. 10.

The contract between Agropur and Scoular, a copy of which Scoular attached to its moving papers, includes the following statement in a section entitled "CONTAMINATION & GUARANTEE": "Except for the foregoing sentence, Scoular disclaims any and all warranties of any kind, express or implied, including the warranties of merchantability and fitness for a particular purpose . . . ." Dalton Decl. Ex. 1 § 9(a), Dkt. No. 23-1. This statement is nestled in the middle of a larger paragraph without any spacing to separate it from other sentences and is presented in the same size font as the rest of the contract's text. That paragraph is located on the fourth of nine pages of contractual language. The disclaiming statement is not set apart by any bold emphasis, capital letters, or any other type of visual distinction. Even the header does not call out the fact that the paragraphs that follow contain a disclaimer of implied warranties; rather, the header highlights that there is some "guarantee." From a visual standpoint, the disclaimer fails to meet the clear requirements of § 336.2-316(2) for conspicuousness; the presentation of

3

the disclaimer does not call attention to it. *Compare with Am. Computer Tr. Leasing v. Jack Farrell Implement Co.*, 763 F. Supp. 1473, 1488 (D. Minn. 1991) (exclusion term was conspicuous where it was "printed in all capital letters while the surrounding terms are almost entirely in regular type" and was located directly above the signature lines), *and Minn. Forest Prods., Inc. v. Ligna Mach., Inc.*, 17 F. Supp. 2d 892, 916-17 (D. Minn. 1998) (finding term conspicuous that stated "As is" and "NO WARRANTY" in all-capital letters with an additional, longer disclaiming sentence in all-capital letters), *and Transp. Corp. of Am. v. Int'l Bus. Mach. Corp.*, 30 F.3d 953, 959 (8th Cir. 1994) (disclaimer in all-capital letters met the requirements of § 336.2-316(2)).

Scoular argues that the analysis should go beyond the visual presentation of the disclaimer. It contends that where the parties to a contract are sophisticated, a clear, unambiguous statement may be effective under Minnesota law even without visual call-outs. Scoular cites statutory commentary for the premise that § 336.2-316 "seeks to protect a buyer from unexpected and unbargained language of disclaimer by . . . permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise." Minn. Stat. Ann. § 336.2-316, UCC Cmt. 1 (Westlaw through laws of 2017 Reg. & 1st Special Sess.). A Minnesota Court of Appeals panel cited Comment 1 to find that where a party "typed the caption on its own form," it "cannot argue surprise," and affirmed a grant of summary judgment enforcing the warranty exclusion provision. *Osgood v. Med., Inc.*, 415 N.W.2d 896, 902 (Minn. Ct. App. 1987); *see also Soo Line R. Co. v. Fruehauf Corp.*, 547 F.2d 1365, 1373 n.13 (8th Cir. 1977) (stating in *dicta* that "Appellant asserts somewhat persuasively that the requirement of conspicuousness is unnecessary in situations involving commercially sophisticated parties of relatively equal bargaining strength").

4

Scoular argues that Agropur cannot claim to have been surprised by the clear disclaimer in Paragraph 9 because "the agreement was a bargained for exchange between two large commercial parties." *See, e.g.*, Scoular Br. 10. The Complaint, however, contains no allegations about the size or sophistication of the parties, about the vigor of the bargaining process leading up to the agreement, or about the drafting of the contract. Scoular asks the Court to take judicial notice of a 2016 annual report on the website www.Agropur.com to support its characterization of Agropur as "the largest dairy co-op in Canada and a major food merchant and manufacturer with strong bargaining power." Scoular Br. 8; *see also id.* at 10 n.2. It asserts that the parties "are large and sophisticated commercial entities" that "reviewed the Agreement and negotiated its terms." *Id.* at 10. Agropur objects to Scoular's request for judicial notice, pointing out that the cited publication does not relate specifically to it. Agropur Opp. 16. The Complaint alleges that Plaintiff is "a Wisconsin corporation with its principal place of business in Appleton, Wisconsin." Compl. ¶ 2. The Court finds that whether the Plaintiff is a large, sophisticated company with strong bargaining power cannot be readily and accurately determined from the document cited by Scoular, and will not take judicial notice of it. *See* Fed. R. Evid. 201(b). Nor will the Court infer such facts from the mere allegation that Agropur "offers a wide variety of products and services" related to food ingredients and dairy products. Compl. ¶ 7.

Therefore, the Court does not decide whether the sophistication of parties to a contract or facts relating to the bargaining for that contract can affect the satisfaction of the § 336.2-316(2) conspicuousness requirement. Even assuming those factors have legal effect, on this motion to dismiss, the record is not sufficiently developed to decide whether the Paragraph 9 disclaimer was "conspicuous" because of such facts. Most of the cases that Scoular cites were decided after factual development. Moreover, some courts have focused on the visual aspects of

"conspicuousness" even in cases involving two corporate parties, *e.g.*, *Valley Paving, Inc. v. Dexter & Chaney, Inc.*, No. C2-00-361, 2000 WL 1182800, at *2 (Minn. Ct. App. Aug. 22, 2000), thus counseling against adopting today, before factual development, what could be viewed as a *de facto* rule that a waiver in a contract between two businesses need not be visually conspicuous.

Scoular also makes a related argument based on subsection 3 of § 336.2-316 that, like its argument based on subsection 2, relies on factual assumptions and is not appropriately decided on a Rule 12(b)(6) motion. Scoular argues that § 336.2-316(3) does not contain a requirement of conspicuousness, because the statute specifies that "[n]otwithstanding subsection (2)," "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty . . . ." Minn. Stat. § 336.2-316(3)(a); *see also* Scoular Reply 4, Dkt. No. 32. It argues that "[t]his is particularly true if those circumstances involve sophisticated, commercial parties . . . ." *Id.* at 6. Commentary indicates that subsection 3(a) is meant to provide examples of the broader rule in subsection 3(c) that "an implied warranty can also be excluded or modified by . . . usage of trade." *See* Minn. Stat. Ann. § 336.2-316, UCC Cmt.7. The "exceptions to the general rule set forth in paragraphs (a), (b) and (c) of subsection (3) are common factual situations in which the circumstances surrounding the transaction are in themselves sufficient to call the buyer's attention to the fact that . . . a certain implied warranty is being excluded." *Id.*, Cmt. 6; *see also St. Croix Printing Equip., Inc. v. Rockwell Int'l Corp.*, 428 N.W.2d 877, 879-81 (Minn. Ct. App. 1988) (describing subsection 3(a) as relating to "commercial usage" and analyzing a contract's use of the "AS IS" phrase in all capital letters with a separate paragraph explaining "the

consequences of buying 'as is'"). Whether any usage of trade or the circumstances surrounding the Agropur-Scoular contract were in themselves sufficient to call Agropur's attention to the disclaimer in Paragraph 9 is a fact question that cannot be resolved yet.

On reply, Scoular also raised a new argument for dismissing Count II that does not appear related to Agropur's response. It argues that "where the buyer gives detailed specifications as to the goods, neither of the implied warranties as to quality will normally apply to the transaction unless consistent with the specifications," quoting a different section of the commentary to the Minnesota statute. *See* Scoular Reply 8 (quoting Minn. Stat. Ann. § 336.2-316, UCC Cmt. 9). Under the Local Rules, a reply memorandum "may not raise new grounds for relief or present matters that do not relate to the opposing party's response." D. Minn. L.R. 7.1(c)(3)(B). Although Scoular might argue that its new Comment 9 argument was invited by Agropur's reference to the specifications included in their agreement, Agropur's briefing related to its claim for breach of express warranty, not implied warranties, and Agropur thus did not have an opportunity to oppose this asserted basis for dismissing Count II. The Court therefore will not consider it. *See Bearden v. Lemon*, 475 F.3d 926, 930 (8th Cir. 2007); *Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 878 (D. Minn. 2007) ("[F]ederal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief.").

The Court therefore denies the motion to dismiss Count II.

### B. Motion for Extension of Time

Scoular also moves for an extension of time to respond to Agropur's Complaint. Agropur filed its Complaint on April 19, 2017, and served Scoular on April 20, making the responsive pleading due May 11. The parties stipulated to an extension to May 31. On May 26, Scoular moved for another extension, through June 30. Dkt. No. 12. Agropur filed a response

7

stating that it did not oppose the request but would oppose any further extensions. Dkt. No. 18. On June 30, Scoular filed the motion for partial dismissal now under consideration and simultaneously moved for an extension of time to respond to the complaint until 14 days after the Court rules on the partially dispositive motion. Dkt. No. 20.

Scoular argues that pursuant to Federal Rule of Civil Procedure 12(a)(4), a Rule 12(b) motion—even for partial dismissal—alters the Rule 12(a) deadline for responding to the complaint. Rule 12(a)(4) provides that "[u]nless the court sets a different time, serving a motion under this rule alters these periods as follows: (A) if the court denies the motion . . . , the responsive pleading must be served within 14 days after notice of the court's action." The rule does not specify whether a partial motion to dismiss affects the deadlines for responding to counts not subject to the motion. Scoular cites many cases that have interpreted the rule as tolling the deadline to answer the complaint in its entirety once a Rule 12(b) motion is filed.

Agropur opposes any further extension of time for Scoular to respond, acknowledging the case law that Scoular cites but citing some authority to the contrary. Agropur argues that it has been and will continue to be prejudiced by the delay in litigation because it is incurring growing costs for storing the approximately 900,000 bottles of protein beverages at issue in this litigation.

Rule 12(a)(4) provides the Court discretion in setting the time for filing a responsive pleading. In addition, Rule 6 allows the Court to extend deadlines for good cause if a party requests an extension before the deadline expires or on motion made after the expired time if the party fails to act because of excusable neglect. Fed. R. Civ. P. 6(b)(1). Without deciding the question of whether Rule 12(a)(4) compels the result Scoular seeks, the parties' discussion of the case law demonstrates that Scoular's request to impose the Rule 12(a)(4) extension is reasonable. Scoular's request for an extension of time is granted.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant The Scoular Company's Partial Motion to Dismiss and Motion for Extension of Time to Respond to the Complaint [Dkt. No. 20] is GRANTED IN PART AND DENIED IN PART as follows:

    a. Count I of Plaintiff Agropur, Inc.'s Complaint is DISMISSED WITH PREJUDICE to the extent it alleges an express warranty based solely on the email attached as Exhibit A to the Complaint.

    b. The Scoular Company's motion to dismiss Count II is DENIED.

    c. The Scoular Company must serve a responsive pleading to the Complaint within 14 days of the date of this Order.

Dated: August 8, 2017	s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge